**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| CESLY PATRICE VASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 2:09-CV-912-TFM |
| MICHAEL J. ASTRUE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42. U.S.C. §§ 1381, *et seq.*, Cesly Patrice Vason ("Vason" or "Plaintiff") requested and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for the reasons herein explained, the Court **AFFIRMS** the Commissioner's decision.

**I.    NATURE OF THE CASE**

Vason seeks judicial review of the Commissioner's decision denying her request for disability insurance benefits and supplemental security income. This

1

court may conduct limited review of such a decision to determine whether it complies with applicable law and is supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II.     STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support

the conclusion. *Lewis*, 125 F.3d at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption

that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III.  BACKGROUND AND PROCEEDINGS

Vason filed a claim for social security disability benefits on August 10, 2005 alleging that the period of disability began October 1, 2004. (Tr. 88, 91). Her claim was initially denied on November 21, 2005. (Tr. 80). On December 19, 2005, Vason requested a hearing before an administrative law judge ("ALJ"). (Tr. 71-72). On May 14, 2008, Attorney Carl S. Pittman represented Vason at the hearing before ALJ Frank Klinger. (Tr. 265). The ALJ heard testimony from the claimant (Tr. 268-284), two medical experts, Drs. James N. Anderson (Tr. 291-293) and Sydney Garner (Tr. 284-291), as well as a vocational expert, Dr. Steve Cosgrove (Tr. 293-296). On June 12, 2008, ALJ Klinger ruled against Vason. (Tr. 12-32). Vason sought administrative review of the decision on August 4, 2008. (Tr. 10). On July 24, 2009, the Social Security Administration's Appeals Council denied Vason's request for review of the ALJ's decision. (Tr. 5-7). The case was subsequently filed in this court on September 25, 2009. *See* Doc. 1, Complaint.

## IV.  ADMINISTRATIVE DECISION

### A. Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). When a claimant is

found disabled – or not – at an early step, the remaining steps are not considered. *Id*. This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step Four. *See Phillips*, 357 F.3d at 1237-39. As such, the claimant bears the burden of proving the following: (1) whether she is currently performing substantial gainful activity; (2) whether she has a severe impairment; (3) whether that severe impairment meets or exceeds an impairment described in the listings; and (4) whether she can perform her past relevant work. *Id.* A *prima facie* case of qualifying disability exists when a claimant carries the Step One through Step Four burden. Only at Step Five does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite her impairments, and is based on all relevant medical and other evidence. *Id*. Moreover, it can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs

available in the national economy the claimant can perform. *Phillips*, 357 F.3d at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. Combinations of these factors yield a statutorily required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

**B. Findings and Conclusions**

Using the five-step analysis, the ALJ first found that Vason had substantial gainful activity in her role as the primary caregiver for her five children. (Tr. 17). Although she was obviously not compensated for this task, the ALJ noted that the work of a "child-sitter" is customarily performed for profit in the economy. (Tr. 17). After finding substantial gainful activity at Step One, the ALJ could have concluded his analysis; nonetheless, he continued the five-step process. (Tr. 17). At Step Two of his decision, the ALJ listed the following impairments to the

6

Plaintiff's health: "major depressive disorder, single episode with psychotic features, psychotic disorder, history of polysubstance dependence, benign gynecological disturbance, a history of muscle strain/sprain, and numerous musculoskeletal complaints without ascertainable physical cause."  (Tr. 17).  At Step Three the ALJ found these impairments were not so severe individually or in combination as to meet the criteria of the listings.  (Tr. 21).

At Step Four, the ALJ reviewed the entire record including Vason's medical records, the documents she submitted in applying for disability benefits, and the transcript of her administrative hearing.  Consequently, the ALJ determined that on the basis of the testimonies of Drs. Garner and Anderson at the hearing, Vason had the RFC to do "light work" consisting of "routine and repetitive" tasks.  (Tr. 21-22).  The ALJ also restricted her work to avoid "hazardous machinery, unprotected heights, and large bodies of water due largely to the self-professed sedating effects of [Vason's] medications."  (Tr. 22).  At Step Five, the ALJ found no past relevant work pursuant to the testimony of the vocational expert, Dr. Cosgrove.  (Tr. 30).  Again relying on the testimony of the vocational expert, the ALJ found that there were significant numbers of jobs in the national economy for a person with the plaintiff's age, education, work experience, and RFC.  (Tr. 31).  In summary, the ALJ found that the claimant was not disabled since August 2, 2005.[1]  (Tr. 32).

---

[1] The record indicates, as mentioned above, that the claimant's application was actually made August *10*, 2005.

## V.   ISSUE

Vason raises a single issue on appeal: "Whether the ALJ erred by failing to properly consider the side effects of the Plaintiff's prescription medications and their effect [on] Plaintiff's ability to work." Pl. Br. at 2.  The Commissioner does not re-characterize the issue.  However, the Commissioner argues the contrary position that the ALJ's decision was "supported by substantial evidence and free of legal error."  Def. Br. at 6.

## VI.   DISCUSSION AND ANALYSIS

Vason contends that the ALJ did not give adequate consideration to her testimony that her prescribed mental illness medications made her (1) generally unfocused and (2) so drowsy that she wanted to sleep for four or more daytime hours each day.  Pl. Br. at 5-6.  Furthermore, she alleges that the ALJ should not have speculated about the care she was or was not providing for her children in light of the professed daytime drowsiness.  *Id.* at 6.  Similarly, she argues that the ALJ improperly "theorized" about the reason that her mental health care provider chose not to change her medications when she complained of drowsiness.[2] *Id.* at 6.  Finally, Plaintiff claims that the ALJ erred in not questioning the vocational expert about the impact that the Plaintiff's drowsiness might have had on her ability to work. *Id.* at 6.

An ALJ may discredit a claimant's subjective testimony if he decides that the testimony lacks credibility.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th

---

[2] This argument is addressed in Footnote 4 below.

8

Cir. 1991). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1213 (M.D. Ala. 2002) (citations omitted). However, if an ALJ discredits subjective pain testimony, he must give "explicit articulation of the reasons justifying [his] decision . . . ." *Moore*, 405 F.3d at 1212 n.4 (citing *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir. 1988)). Thus, an ALJ's authority to discredit a claimant's testimony relating to pain or other symptoms is limited by an ALJ's obligation to leave a record of his reasoning. *Id.* (citing *Cannon,* 858 F.2d at 1545).

The ALJ had before him sufficient medical records about Vason's mental illness and the objective evidence of a medical professional, Dr. Sydney Garner, who affirmed that Vason's prescribed medications could cause drowsiness and/or inability to focus. (Tr. 17, 290). Accordingly, the ALJ acknowledged, "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." (Tr. 23). Even so, the ALJ chose to reject Vason's subjective testimony concerning her daytime drowsiness because of her lack of credibility, and he gave ample analysis for his decision to discredit Vason. (Tr. 23-30).

### A. The ALJ's Response to the Plaintiff's Conflicting Testimony

First, the ALJ explained that he found it incredible that Vason sleeps four or more hours a day and simultaneously cares for her five-year-old daughter, as well as her other four young children when they were not at school. (Tr. 23-24,

9

28).  The ALJ reasons that if Plaintiff was truly as sleepy or distracted as she claims to be that she would have sought more assistance – either from her family or the Department of Human Resources – in order to adequately care for her children.  (Tr. 24, 28).

The Plaintiff argues that this conclusion was presumptive and speculative.  Pl Br. at 6.  During her hearing, the ALJ asked Plaintiff about her role as parent and caregiver.  (Tr. 269).  It is not improper for an ALJ to consider such daily activities in assessing a claimant's RFC.  *See Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir. 1987).  In response to the ALJ's inquiry, Vason confirmed that she had sole custody of her five children, that she had raised them since birth, and that she handled household tasks for them like cleaning, cooking, laundry, etc.  (Tr. 269).  The ALJ also specifically asked about her five-year-old daughter's care.  Plaintiff testified, "She's there all day with me" with the exception that "sometimes her . . . grandmother has her during the day."  (Tr. 275-76).  Vason also testified that she received assistance from her mother and sisters "at least three times out of the week."  (Tr. 270).  The Commissioner correctly notes that this testimony is in conflict with Plaintiff's "Daily Activities Questionnaire" dated September 14, 2005, in which she reported not seeing family or friends much.  (Def. Br. at 9, citing (Tr. 110)).  Vason completed the questionnaire almost three years prior to the hearing date and the ALJ gave Vason the benefit of the doubt that her interaction with and dependence on her family might have changed within that time.

However, in contradiction to her testimony that her five-year-old was with her all day roughly four days a week, Plaintiff also testified at her hearing that she would "sleep at least four hours" a day "off and on" throughout the day. (Tr. 276). While the Plaintiff did report the side effect of drowsiness at her appointments with the Montgomery Area Mental Health Authority ("MAMHA"), these complaints were very sporadic – once in November 2006 and twice in October 2007.[3] (Tr. 234, 240, 258). The records from MAMHA on these dates indicated only that Vason felt "drowsy," "sleepy," or "fatigued." *Id.* The records did not convey a need to sleep for four or more daytime hours. What's more, the medical staff never noted that her sleepiness was interfering with her daily responsibilities. In response to her few complaints, MAMHA professionals did not change her medication or dosage.[4]

Thus, there were conflicts within Plaintiff's own testimony as well as conflicts between her testimony and the record. The existence of these conflicts gave the ALJ cause to question the Plaintiff's credibility. Whether or not the Plaintiff neglects her children while she allegedly slept each day was not the issue, even though the ALJ mentioned this scenario in his analysis. (Tr. 24, 28). The

---

[3] The ALJ noted that while it could be mere coincidence, the Plaintiff's few complaints of drowsiness at her check-ups often came shortly after her receipt of notice of upcoming hearings with the Social Security Administration. (Tr. 28).

[4] Concerning the ALJ's assessment of MAMHA records, the Plaintiff contests the ALJ's statement that "the mental health staff *apparently did not feel compelled to change her medications or reduce her doses*" in response to her complaints of drowsiness. (Tr. 28 (emphasis added)). Plaintiff argues that this comment, too, was improper and speculative. Pl. Br. at 6. In this instance, however, the ALJ did not appear to be guessing as to the motives of Vason's health care providers; neither was he substituting his own lay judgment for the judgment of medical professionals. To the contrary, he appeared merely to be making the following factual conclusion: that in response to Vason's complaints of drowsiness, her mental health care providers – for whatever reason - did not see fit to change her medication or dosage. Plaintiff's challenge to the ALJ's statement is therefore without merit.

11

ALJ merely posed this scenario to expose the real issue – whether he should believe Vason or not.  The ALJ did not find Vason credible.  The ALJ's conclusion that Plaintiff's testimony was not entirely credible was not founded on baseless conjectures, but instead on the obvious discrepancies in the evidence before him.  "It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record."  *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001).  Thus, in this instance the ALJ did not err in questioning Vason's testimony and ultimately discrediting her.

## B. The ALJ's Reliance on the Plaintiff's History of Malingering

In addition to discrepancies in the Plaintiff's testimony, the ALJ also discussed her history of malingering as a reason to discredit her testimony.[5]  (Tr. 28-29).  The Social Security Administration scheduled Vason for a psychiatric evaluation on October 26, 2005.  (Tr. 215).  Dr. Karl Kirkland, the psychologist administering the exam, reported that Vason was "openly dishonest," presenting herself in an unkempt and disoriented manner and feigning hallucinatory episodes[6] throughout the consultation.  (Tr. 29, 217).  Dr. Kirkland expressly noted that the attempts to malinger were "juvenile" stating, "[Plaintiff] was clearly doing a poor job of malingering."  (Tr. 29, 217-18).  Vason's contrary records from her

---

[5] The Commissioner relies primarily on the Plaintiff's history of malingering in his defense of the ALJ's decision.  Def. Br. at 7-8.

[6] For instance, in this one sitting, Plaintiff acknowledged and had conversations with imaginary persons, animated teddy bears, and a large talking lizard.  (Tr. 217).

12

evaluations with MAMHA[7] are further proof that she malingered at her evaluation with Dr. Kirkland. (Tr. 29, 233-58).

The Plaintiff does not contest the ALJ's reliance on her episode of malingering, but this evidence is included in the court's analysis to buttress the Commissioner's position that the ALJ's decision was in fact based on substantial evidence. "[M]alingering constitutes substantial evidence upon which the ALJ could base his decision to discredit [a Plaintiff's] testimony with regard to [her] subjective complaints of pain." *Sellers*, 246 F. Supp. 2d at 1213.

### C. The ALJ's Decision to Discredit the Plaintiff and Its Impact on the Testimony of the Vocational Expert

Finally, the Plaintiff argues that the ALJ erred in failing to elicit testimony from the vocational expert regarding the impact of Plaintiff's drowsiness on her ability to do work. Pl. Br. at 6 (citing *Lacy v. Barnhart*, 309 F.Supp.2d 1345, 1352 n.24 (N.D. Ala 2004) (citing *MacGregor*, 786 F.2d at 1054)). "When there have been non-exertional factors (such as . . . medication side effects) the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." *MacGregor*, 786 F.2d at 1054 (11th Cir. 1986) (citing *Cowart v. Schweiker,* 662 F.2d 731, 736 (11th Cir.1981)). More generally, when a vocational expert testifies, an ALJ "must pose a hypothetical question [for the expert] that comprises *all* of the claimant's impairments." *Jones*, 190 F.3d at 1229 (emphasis added).

---

[7] Other psychiatric evaluations of the Plaintiff in the record consistently describe her as appearing clean, kempt, lucid, and well-oriented. (Tr. 233-58).

13

However, where an ALJ has properly discredited a claimant's testimony with regard to her subjective symptoms, it is unnecessary for the ALJ to ask the vocational expert to address these symptoms in his analysis. *See Gallina v. Comm'r of Soc. Sec.*, 202 Fed. App'x. 387, 389 (11th Cir. 2006); *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x. 946, 950 (11th Cir. 2006). Therefore, because the ALJ properly based his decision to discredit Plaintiff on substantial evidence, he was not required to highlight the Plaintiff's alleged symptoms of drowsiness in his hypothetical question for the vocational expert.[8]

## VII.   CONCLUSION

Pursuant to the findings of this Opinion, the Court concludes that the decision of the ALJ was based on substantial evidence and that no legal error was committed. Therefore, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate Judgment is entered herewith.

DONE this 30th day of June, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[8] Even if the ALJ *was* required to pose a hypothetical question referencing the Plaintiff's subjective pain testimony, the court notes that it does not appear that the ALJ ignored the possible effect of Plaintiff's alleged drowsiness on her ability to work. Specifically, the ALJ asked pointed questions of the doctors during the hearing – and then asked Dr. Cosgrove for his opinion based on the medical expert testimony. For example, the ALJ asked Dr. Anderson if "someone taking the amounts of medicine that [Plaintiff was] taking would be able to . . . *stay awake and concentrate for the duration of her workday*." (Tr. 293, (emphasis added). He also established her RFC on the basis of Dr. Anderson's recommendation that she avoid heights, open bodies of water, and dangerous machinery since the Plaintiff claimed to suffer such persistent drowsiness. (Tr. 30, 292).

14